IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TERRY BURNETT, #B14533, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 19-cv-00628-SMY |
| | ) |
| NATHAN CHAPMAN, | ) |
| DMD ANDY, | ) |
| DENTAL NURSE, | ) |
| WEXFORD INC., | ) |
| JB PRITZKER, | ) |
| JOHN BALDWIN, and | ) |
| LOUIS SHICKER, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Terry Burnett, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Robinson Correctional Center ("Robinson"), brings this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. Plaintiff asserts Eighth and Fourteenth Amendment claims related to dental care. (Doc. 1). He seeks monetary damages and injunctive relief. (*Id.*).

This case is now before the Court for preliminary review of the Complaint under 28 U.S.C. § 1915A, which requires the Court to screen prisoner Complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). Any portion of the Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

**The Complaint**

Plaintiff makes the following allegations in his Complaint: The Illinois prison system is

plagued by persistent unremedied failures to provide constitutionally adequate medical and dental care to inmates. (Doc. 1, p. 8). The failures are well known to the State Defendants. In December 2014, a report on the issue of healthcare provided by IDOC for inmates was issued stating, "[t]he State of Illinois has been unable to meet minimal constitutional standards with regard to the adequacy of its healthcare program for the population it serves." (*Id.* at 8-9).

On December 26, 2018, Plaintiff told a C/O that he was in pain because a tooth broke and a filling fell out while he was eating lunch. (*Id.* at 9). The C/O told him to sign up for sick call. He was seen at sick call by nursing staff the next day and was told he would be put in to see a dentist. (*Id.* at 9-10).

On January 5, 2019, Plaintiff had his first visit with the dentist and it was deemed an emergency. (*Id.* at 10). He was told his #14 tooth needed to be extracted and that it could take up to two months for an appointment to perform the extraction. The dentist put in a temporary filling. On January 15, 2019, the temporary filling and more of his tooth fell out. He wrote to the dentist to inform him what happened and to tell him that he was in pain and felt like his tooth was infected.

Plaintiff saw Dr. Shah in the call line at the health care unit (HCU) on January 31, 2019 and told him about the pain and infection from his broken tooth. Dr. Shah called the dentist's nurse and she stated that Plaintiff was on the call line for the dentist the next day.

On February 1, 2019, Plaintiff was seen by Dr. Chapman in the dental office and was told he was on the waiting list to have his tooth pulled. Because his tooth was infected, he was given 30 tablets of penicillin (500 mg) and 20 tablets of ibuprofen (400 mg). (*Id.* at 10-11).

Plaintiff was called to the dentist on February 15, 2019 to have his #14 tooth removed. (*Id.* at 11). The dentist had a hard time removing the tooth and Plaintiff received two shots of pain numbing medication. He was given 20 tablets of ibuprofen (800 mg) after the tooth was removed.

On February 19, 2019, Plaintiff went to sick call. The sick call nurse called the dentist's nurse. The dentist's nurse told Plaintiff that he probably had a sinus problem, not an infection. (*Id.* at 11, 20). No one looked in his mouth at the area where the tooth had been pulled. He was given more ibuprofen (400 mg).

Plaintiff went to sick call for pain and an infection on February 26, 2019 and was seen by nursing staff. Dr. Shah was notified. He was given 30 tablets of penicillin (500 mg) and 20 tablets of ibuprofen (600 mg). He was told he would be put in to see the dentist and that he had a cavity in the tooth next to the one that had been pulled. (*Id.* at 11-12, 20).

On March 5, 2019, a large piece of tooth or bone dislodged from the site where Plaintiff's #14 tooth had been pulled and there was bleeding. (*Id.* at 12). He saw the dentist's nurse and was given gauze to stop the bleeding. Three days later, another piece of tooth or bone dislodged from the same area. He went to sick call and was told by nursing staff that it was probably not infected, just painful because of the pieces of tooth or bone that came out. The nurse did not look in his mouth. He was given 18 tablets of Tylenol (325 mg).

On March 31, 2019, Plaintiff went to sick call for pain caused by pieces of tooth or bone fragments in the area where has #14 tooth was pulled. (*Id.* at 13). He was given 20 tablets of ibuprofen (400 mg). Plaintiff sent a request to dental on April 18, 2019 because of pain in the area where his #14 tooth was pulled caused by a piece of sharp tooth or bone fragment.

On May 12, 2019, a piece of tooth or bone fragment came out a as a result of Plaintiff picking and scratching at it with his fingernail. Plaintiff was called to the dentist on May 25, 2019. He told "Dentist Andy" and the dental nurse that he was no longer in pain because he had picked out the last piece of tooth or bone. Defendants failed to provide Plaintiff with adequate and timely dental care and failed to follow IDOC policies and procedures on providing dental care to inmates.

3

(*Id.* at 14).

Based on the allegations in the Complaint, the Court finds it convenient to divide the action into the following Counts:

>   **Count 1:** Eighth Amendment deliberate indifference to serious medical needs claim against Chapman, Andy, Dental Nurse, and Wexford, Inc. for delaying and/or denying dental care.
>
>   **Count 2:** Eighth Amendment deliberate indifference to serious medical needs claim against Pritzker, Baldwin, and Shicker for deficiencies in medical and dental care in the IDOC that caused the delay and/or denial of dental care for Plaintiff.
>
>   **Count 3:** Fourteenth Amendment claim against Defendants because they failed to follow IDOC policies and procedures on providing dental care to inmates.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designations do not constitute an opinion regarding their merit. **Any other intended claim that has not been recognized by the Court is considered dismissed without prejudice as inadequately pleaded under the *Twombly* pleading standard.[1]**

## Preliminary Dismissals

In his statement of claim, Plaintiff refers to individuals who are not named as defendants, including Dr. Shah, "Nursing Staff," and "sick call Nurse." Because these individuals are not identified as defendants in the case caption, any claims against them are dismissed without prejudice. *Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005) (holding that to be properly considered a party, a defendant must be specified in the caption).

---

[1] An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

**Discussion**

28 U.S.C. § 1983 creates a cause of action based on personal liability and predicated upon fault. Therefore, "to be liable under § 1983, the individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park,* 430 F.3d 805, 810 (7th Cir. 2005). To state a claim against a defendant, a plaintiff must describe what the defendant did or failed to do that violated the plaintiff's constitutional rights. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (failure to assert a specific act of wrongdoing to a specific individual does not meet the personal involvement requirement necessary for Section 1983 liability). Plaintiff is also required to associate specific defendants with specific claims so that defendants are put on notice of the claims brought against them and can properly answer the Complaint. *Twombly*, 550 at 555; FED. R. CIV. P. 8(a)(2).

Under Federal Rule of Civil Procedure 8, the Complaint must include a short, plain statement of the case against each individual; allegations made collectively against a group of defendants fails to comply with Rule 8. Further, threadbare, conclusory allegations are insufficient to state a claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

**Count 1**

To state an Eighth Amendment claim for deliberate indifference to a serious medical need, an inmate must show that (1) he suffered from an objectively serious medical condition; and (2) the defendant was deliberately indifferent to a risk of serious harm from that condition. *Rasho v. Elyea*, 856 F.3d 469, 475-76 (7th Cir. 2017). The denial of proper dental care for a serious dental condition may violate the Eighth Amendment. *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001). Objectively serious dental needs include those for which a failure to treat causes problems such as headaches, extreme pain, bleeding, infected gums, and problems eating. *Id.* at 593. The

broken tooth and associated pain and infection Plaintiff describes in the Complaint are sufficiently serious to satisfy the objective component of this claim for screening purposes.

The subjective component of the claim requires Plaintiff to demonstrate that each Defendant responded to his dental condition with deliberate indifference. *See Berry v. Peterman*, 604 F.3d 435, 440-41 (7th Cir. 2010); *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). It is unclear where dentists Chapman and Andy fit in the chain of events for individuals responsible for Plaintiff's dental care. Plaintiff identifies only one dental visit with Chapman during which care was provided and there is no suggestion of deliberate indifference. He associates Andy only with the last dental visit at which time his dental issue had resolved. Plaintiff's numerous references to "the dentist" and writing "to dental" fail to allege conduct by a specific individual. Similarly, it is unclear whether the various references to the "dentist's nurse" and the "dental nurse" ascribe conduct to the same individual.

Although Plaintiff alleges he did not receive proper dental treatment, the Complaint does not sufficiently allege the individual defendants failed to appropriately treat his condition and acted with the requisite state of mind regarding his dental care. Accordingly, Plaintiff's deliberate indifference claim against Chapman, Andy, and the Dental Nurse in Count 1 will be dismissed without prejudice for failure to state a claim for relief.

Plaintiff also fails to state a claim against Wexford. As a private corporation providing healthcare for prisoners, Wexford can be held liable for deliberate indifference only if it had a policy or practice that caused the alleged violation of a constitutional right. *Shields v. Illinois Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014). It cannot be held liable based on the actions of its employees or agents. *Id.* ("*respondent superior* liability does not apply to private corporations under § 1983"). While Plaintiff lists Wexford as a defendant, he does not allege that any Wexford

policy or practice caused the individual dental providers to deny and/or delay treatment. As such, Plaintiff's deliberate indifference claim against Wexford in Count 1 will also be dismissed without prejudice for failure to state a claim for relief.

**Count 2**

Plaintiff names Governor Pritzker, IDOC Director Baldwin, and Medical Director Shicker as Defendants but makes no specific allegations against them. Instead, he alleges the Illinois prison system is "plagued by persistent unremedied failures to provide constitutionally adequate medical and dental care" to inmates and that these failures are well known to the "State Defendants" and references a study that recognized such failures.

Plaintiff's conclusory allegations are insufficient to state a deliberate indifference claim against these defendants. *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). He does not identify or described any specific systemic deficiencies in dental care of which these individuals were aware that resulted in the delays or denials of dental treatment he allegedly encountered. Nor does he allege that they are responsible for IDOC policies or practices that resulted in such delays or denials of dental treatment. For these reasons, Plaintiff's deliberate indifference claim against Pritzker, Baldwin, and Shicker in Count 2 will be dismissed without prejudice for failure to state a claim for relief.

**Count 3**

Plaintiff claims his Fourteenth Amendment rights may have been violated and that "they" failed to follow IDOC policies and procedures. He references a six-page IDOC Administrative Directive on Dental Care for Offenders attached to his Complaint. A purported violation of a state administrative rule, such as the Administrative Directive cited by Plaintiff, does not give rise to a federal constitutional claim. See, *Archie v. City of Racine*, 847 F.2d 1211, 1217 (7th Cir. 1988)

7

(en banc); *Pasiewicz v. Lake County Forest Preserve Dist.*, 270 F.3d 520, 526 (7th Cir. 2001). Count 3 will therefore be dismissed without prejudice for failure to state a claim for relief.

### Motion for Recruitment of Counsel

Civil litigants do not have a constitutional or statutory right to counsel. *Pruitt v. Mote*, 503 F.3d 647, 649 (7th Cir. 2007). Under 28 U.S.C. § 1915(e)(1), however, the Court has discretion to recruit counsel to represent indigent litigants in appropriate cases. *Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir. 2006). When deciding whether to recruit counsel for an indigent litigant, the Court must consider (1) whether the indigent plaintiff has made reasonable attempts to secure counsel on his own, and, if so, (2) whether the difficulty of the case exceeds the plaintiff's capacity as a layperson to coherently present it. *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (citing *Pruitt*, 503 F.3d at 654).

Plaintiff states he has written to attorneys but has not received any responses. The Court finds that, while responses to Plaintiff's requests are pending, the recruitment of counsel is premature. Moreover, given the early stage of the litigation, it is difficult to accurately evaluate the need for assistance of counsel. *Kadamovas v. Stevens*, 706 F.3d 843, 845 (7th Cir. 2013). Accordingly, the Motion for Recruitment of Counsel (Doc. 3) is **DENIED** without prejudice.

Plaintiff may renew his request at a later date. If Plaintiff does renew his request, he should give the Court rejection letters from at least three attorneys to prove that he has made reasonable efforts to obtain counsel on his own. He should also explain the reasons he believes he is unable to represent himself.

### Disposition

**IT IS HEREBY ORDERED** that this matter does not survive 28 U.S.C. § 1915A review, and the Complaint is **DISMISSED** without prejudice for failure to state a claim upon which relief

8

may be granted.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Recruitment of Counsel (Doc. 3) is **DENIED** without prejudice.

**IT IS FURTHER ORDERED** that Plaintiff is **GRANTED** leave to file a First Amended Complaint on or before **OCTOBER 4, 2019**. Should Plaintiff decide to file a First Amended Complaint, he should identify each defendant in the case caption and set forth sufficient allegations against each defendant to describe what the defendant did or failed to do to violate his constitutional rights. A successful complaint generally alleges "the who, what, when, where, and how ...." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). Plaintiff should attempt to include the relevant facts of his case in chronological order, inserting each defendant's name where necessary to identify the actors and each defendant's actions. The First Amended Complaint should comply with Rule 8 and *Twombly* pleading standards.

If Plaintiff fails to file his First Amended Complaint within the allotted time or consistent with the instructions set forth in this Order, the entire case shall be dismissed with prejudice for failure to comply with a court order and/or for failure to prosecute his claims. FED. R. CIV. P. 41(b); *Ladien v. Astrachan*, 128 F.3d 1051 (7th Cir. 1997); *Johnson v. Kamminga*, 34 F.3d 466 (7th Cir. 1994); 28 U.S.C. § 1915(e)(2). The dismissal shall count as one of Plaintiff's three allotted "strikes" under 28 U.S.C. § 1915(g).

An amended complaint supersedes and replaces the original complaint, rendering the original complaint void. *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n. 1 (7th Cir. 2004). The Court will not accept piecemeal amendments to the original Complaint. Thus, the First Amended Complaint must stand on its own, without reference to any previous pleading, and Plaintiff must re-file any relevant exhibits he wishes the Court to consider. The First Amended

Complaint is subject to review pursuant to 28 U.S.C. § 1915A.

If Plaintiff decides to file a First Amended Complaint, it is strongly recommended that he use the civil rights complaint form designed for use in this District. He should label the form, "First Amended Complaint," and he should use the case number for this action (No. 19-cv-00628-SMY). To enable Plaintiff to comply with this Order, the **CLERK** is **DIRECTED** to mail Plaintiff a blank civil rights complaint form.

Plaintiff is further **ADVISED** that his obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee remains due and payable, regardless of whether Plaintiff elects to file a First Amended Complaint. See 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 7 days after a transfer or other change in address occurs. Failure to comply with this Order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: SEPTEMBER 3, 2019**

*s/ Staci M. Yandle*
**STACI M. YANDLE**
**United States District Judge**